LME v ARS

Docket No. 242681. Submitted January 7, 2004, at Detroit. Decided
March 16, 2004, at 9:10 A.M.

LME, who is the mother of BME and relies on public assistance for
her child, and the Macomb County Family Independence Agency
petitioned the Macomb Circuit Court for child support from ARS.
A New York court had entered an order of filiation, but had
declined to order payment of child support, after ARS acknowl-
edged paternity and agreed to submit to the jurisdiction of the
Macomb Circuit Court on the issue of child support. BME was
conceived when ARS was fourteen years old and LME was twenty
years old. The court, Peter J. Maceroni, J., declined to order
payment of child support, determining that ARS was the victim of
LME's criminal sexual conduct of having sexual relations with a
person who was below the age of consent. The petitioners ap-
pealed.

The Court of Appeals *held*:

1. The Macomb Circuit Court had subject-matter jurisdiction
pursuant to the Uniform Interstate Family Support Act (UIFSA),
MCL 532.1101 *et seq.*, to determine whether child support should
be awarded in this case.

2. The petitioners, by not raising the issue below, have for-
feited appellate review of their claim that New York has continuing
jurisdiction over the issue of child support and that such jurisdic-
tion precludes the circuit court from making any determination
regarding child support.

3. The circuit court, in dismissing the petition for child sup-
port, did not fail to give full faith and credit to the New York
court's order of filiation. Nothing in the circuit court's order set
aside the New York court's determination of parentage.

4. The circuit court did not violate the equal protection rights
of the petitioners and the minor child when it considered the
circumstances of the child's conception in declining to order the
payment of child support. However, the circuit court erred by
refusing to award child support on the basis that ARS was the
victim of an act of criminal sexual conduct. Child support is not

imposed to penalize or victimize either parent. The purpose of child support is to provide for the needs of the child. The needs of the child are of overriding importance. This important public policy is furthered in this case by requiring ARS to pay child support.

5. The petitioners' claim, that they were denied due process of law because the circuit court dismissed their request for child support with prejudice, need not be addressed because this case is being remanded for a hearing to determine the amount of child support to be paid by ARS.

6. The petitioners' claim that the circuit court's dismissal of the case constituted a termination of the parental rights of ARS was not raised below and is not preserved for appellate review. In any event, ARS, not the petitioners, is the proper party to raise this claim.

Reversed and remanded for determination of amount of child support.

SCHUETTE, J., concurring, stated that in the absence of any contrary directive by the Legislature, the public policy of this state provides that child support is for the benefit and needs of the child involved. With respect to the requirement of payment of child support, Michigan law does not contain any exceptions based on consensual or nonconsensual sexual activity that results in a child being conceived, or on whether a participant was coerced, seduced, or victimized.

PARENT AND CHILD — CHILD SUPPORT — FATHERS YOUNGER THAN SIXTEEN YEARS.

A male under sixteen years of age who fathers a child of an adult female, notwithstanding that he may be a victim of criminal sexual conduct, is not absolved of the responsibility to pay support for the child; child support is not imposed to penalize or victimize either parent, but to provide for the needs of the child.

*Carl J. Marlinga*, Prosecuting Attorney, and *Joseph F. Dillard*, Assistant Prosecuting Attorney, for the petitioners.

*Peter L. Conway* and *Patrick A. Keenan* for the respondent.

Before: OWENS, P.J., and SCHUETTE and BORRELLO, JJ.

OWENS, P.J. Petitioners appeal as of right from the order denying their motion for child support and dismissing the case with prejudice. Petitioners contend that the trial court erred by concluding that LME was not entitled to child support because the child was conceived as a result of her criminal action in having sexual relations with respondent when he was a fourteen-year-old boy. The purpose of child support is to provide for the needs of the child; it is awarded without regard to the fault of either of the parents. The trial court therefore erred by refusing to order child support because respondent was technically the victim of an uncharged act of criminal sexual conduct. We reverse the decision of the trial court and remand for a hearing and the entry of an order of child support.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner LME was born in 1968 and respondent was born in 1974. In 1989, while married, she gave birth to BME and listed her husband, DLE, as the child's father. In 2000, she and DLE were divorced in New York. In the course of the divorce proceedings, or immediately after the divorce was granted, blood tests established that DLE was not BME's biological father. In 2001, a New York hearing examiner entered a filiation order indicating that respondent had appeared with counsel and admitted being BME's father. The order therefore declared respondent to be BME's father, but, in a separate order, declined to order child support "based on the respondent's submission to the jurisdiction of Michigan for the entry of an order of support."

Subsequently, the Macomb County prosecutor, on behalf of petitioners, petitioned the trial court for child

support.[1] Respondent objected on the basis that (1) BME was conceived as a result of criminal sexual conduct perpetrated against him by LME when he was fourteen years old, (2) BME was conceived and born while LME was married to DLE, (3) respondent had no knowledge of BME until this case was commenced, and (4) LME should not be allowed to profit (in the form of child support) by her misconduct.

The trial court determined that BME was a child born out of wedlock within the meaning of the Paternity Act, MCL 722.711(a). The court found no provision in the Family Support Act, MCL 552.451 *et seq.*, that entitled LME to her requested relief or that prohibited the court from refusing to grant relief under the circumstances presented in this case. The court then applied equitable principles to deny the petition for child support. After the trial court denied petitioners' motion for reconsideration, petitioners appealed to this Court.

## II. THE TRIAL COURT'S SUBJECT-MATTER JURISDICTION

Petitioners first claim that, where the New York court had already determined the filiation issue and had sent the case to Michigan specifically for a child support determination, the New York court acted improperly because it was required by New York law to order child support, and the Michigan court acted improperly be-

---

[1] Petitioners appear to assert that this case was initiated in the Macomb Circuit Court with the filing of a petition pursuant to the Uniform Interstate Family Support Act (UIFSA), MCL 552.1101 *et seq.*, requesting that New York determine parentage of the child and order child support. There is nothing in the record that has been submitted to this Court to substantiate this claim. In any event, we find this assertion —even if correct—irrelevant to our decision.

cause it resolved the child support issue rather than
returning the case to New York. We disagree.

Initially, we note that petitioners waived this claim
because they expressly acquiesced to the trial court's
exercise of jurisdiction to determine child support un-
der Michigan law. *People v Carter,* 462 Mich 206, 215;
612 NW2d 144 (2000) (waiver is the intentional aban-
donment of a known right and it extinguishes any
error). Indeed, it was petitioners who petitioned the
Michigan trial court to determine the appropriate
amount of child support. This intentional resort to the
Michigan courts waives their appellate claim that child
support should have been decided by the New York
court.

However, petitioners also claim that the trial court
lacked subject-matter jurisdiction to try this case be-
cause the New York statutes required the New York
court to determine child support rather than send the
case to Michigan for such a determination. "Subject-
matter jurisdiction is not subject to waiver because it
concerns a court's 'abstract power to try a case of the
kind or character of the one pending' and is not
dependent on the particular facts of the case." *Travelers
Ins Co v Detroit Edison Co,* 465 Mich 185, 204; 631
NW2d 733 (2001) (emphasis omitted), quoting *Camp-
bell v St John Hosp,* 434 Mich 608, 613-614; 455 NW2d
695 (1990). We will therefore review this issue for the
limited purpose of determining whether the trial court
lacked subject-matter jurisdiction to decide whether to
award child support.[2]

---

[2] Petitioners also claim, without citing any relevant authority and
without presenting this claim in their statement of the issue, that the
doctrine of res judicata barred respondent from raising any defense in
Michigan to the determination in New York that he had a duty to support
his child. We will not consider this claim because it is not included in
petitioners' statement of the issue, MCR 7.212(C)(5); *Guardian Photo,*

We review de novo the issue whether a trial court has subject-matter jurisdiction. *Atchison v Atchison*, 256 Mich App 531, 534; 664 NW2d 249 (2003). Additionally, consideration of petitioners' claim also involves issues of statutory interpretation, which are reviewed de novo. *Id.* at 534-535. "The primary goal of statutory interpretation is to give effect to the intent of the Legislature. This determination is accomplished by examining the plain language of the statute itself. If the statutory language is unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required." *Id.* at 535 (citations omitted).

The trial court obtained personal jurisdiction over respondent when he appeared and contested the petition for child support. MCL 552.1201(b). But subject-matter jurisdiction "concerns a court's 'abstract power to try a case of the kind or character of the one pending.' " *Travelers Ins Co, supra* at 204 (emphasis omitted). It cannot be stipulated by the parties or waived by a party's failure to object. *Harris v Vernier,* 242 Mich App 306, 316; 617 NW2d 764 (2000).

It is uncontested that Michigan courts have jurisdiction to award child support. *Scott v Scott,* 182 Mich App 363, 366; 451 NW2d 876 (1990). Initially, this jurisdiction derives from the general jurisdiction imparted to circuit courts by the Michigan Constitution:

> The circuit court shall have original jurisdiction in all matters not prohibited by law; appellate jurisdiction from all inferior courts and tribunals except as provided by law;

*Inc v Dep't of Treasury,* 243 Mich App 270, 281; 621 NW2d 233 (2000), and because petitioners have merely stated the claim without providing this Court with any supporting authority. *Mudge v Macomb Co,* 458 Mich 87, 104-105; 580 NW2d 845 (1998), quoting *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959).

power to issue, hear and determine prerogative and reme-
dial writs; supervisory and general control over inferior
courts and tribunals within their respective jurisdictions in
accordance with rules of the supreme court; and jurisdic-
tion of other cases and matters as provided by rules of the
supreme court. [Const 1963, art 6, § 13.]

The circuit court's subject-matter jurisdiction will be
presumed unless denied by constitution or statute.
*People v Goecke,* 457 Mich 442, 458; 579 NW2d 868
(1998); *Bowie v Arder,* 441 Mich 23, 38; 490 NW2d 568
(1992). See also MCL 600.151 (circuit court is a court of
"general jurisdiction") and MCL 600.601 (setting forth
the jurisdiction and powers of the circuit court).

In addition to its general jurisdiction over "all mat-
ters not prohibited by law," our Legislature has specifi-
cally granted circuit courts jurisdiction over matters
involving paternity and child support. MCL 722.714(1)
provides that an "action under [the Paternity Act] shall
be brought in the *circuit court* by the mother, the father,
a child who became 18 years of age . . ., or the family
independence agency as provided in this act." (Empha-
sis supplied.) See also MCL 722.712 (parents of a child
born out of wedlock are liable for necessary support of
the child), MCL 722.714b (establishment of paternity
under the law of another state has the same effect as an
acknowledgment of paternity or an order of filiation
entered in this state), MCL 722.717 (providing for order
of filiation declaring paternity and providing for sup-
port of child), MCL 552.605 (providing that child sup-
port amount is to be determined according to formula
developed by state friend of the court bureau).

Although a *paternity* action may not be brought "if
the child's paternity is established under the law of
another state," MCL 722.714(2), the Family Support
Act (FSA), MCL 552.451 *et seq.,* permits actions for *child
support* against a noncustodial parent by either a cus-

todial parent or the director of social services (now the director of the Family Independence Agency) if the child is supported by public assistance. See MCL 552.451a and MCL 552.451b.

This case was initiated in the circuit court by a petition for child support on the basis that respondent had acknowledged paternity, an order of filiation had been entered, and LME was relying on public assistance for support of her child. Under the plain language of the above-mentioned statutes, the circuit court clearly had subject-matter jurisdiction to determine the question of child support. Petitioners contend, however, that the court's "ordinary" jurisdiction was lacking because this case was brought as an action under the Uniform Interstate Family Support Act (UIFSA), MCL 552.1101 *et seq.*

The stated general purpose for adopting the UIFSA in Michigan was "to make uniform the law with respect to the subject of this act among states enacting it." MCL 552.1107.[3] The UIFSA contains a number of definitions relevant to the resolution of the question presented in this case. MCL 552.1102(e) defines the "home state" as the "state in which a child lived with a parent or a person acting as parent for at least 6 consecutive months immediately preceding the time of petitioning for support. . . ." MCL 552.1103 provides, in relevant part:

> (c) "Initiating state" means a state from which a proceeding is forwarded or in which a proceeding is filed for forwarding to a responding state under this act or a law or procedure substantially similar to this act, the uniform

---

[3] The UIFSA took effect in Michigan on June 1, 1997. MCL 552.1901. The UIFSA was similarly enacted in New York as part of the Family Court Act (FCA), § 580-101 *et seq.*, effective December 31, 1997. See NY Family Ct 580-904.

reciprocal enforcement of support act, or the revised uniform reciprocal enforcement of support act, 1952 PA 8, MCL 780.151 to 780.183.

(d) "Initiating tribunal" means the authorized tribunal in an initiating state.

(e) "Issuing state" means the state in which a tribunal issues a support order *or renders a judgment determining parentage.*

(f) "Issuing tribunal" means the tribunal that issues a support order *or renders a judgment determining parentage.* [Emphasis supplied.]

MCL 552.1104 provides, in relevant part:

(c) "Responding state" means a state in which a proceeding is filed or to which a proceeding is forwarded for filing from an initiating state under this act or a law or procedure substantially similar to this act, the uniform reciprocal enforcement of support act, or the revised uniform reciprocal enforcement of support act, 1952 PA 8, MCL 780.151 to 780.183.

(d) "Responding tribunal" means the authorized tribunal in a responding state.

* * *

(j) "Tribunal" means a court, administrative agency, or quasi-judicial entity authorized to establish, enforce, or modify support orders or determine parentage.

MCL 552.1108 provides that "[t]he circuit court is the tribunal for this state." MCL 552.1221 provides that: "this state's tribunal may serve as an initiating tribunal to forward proceedings to another state and as a responding tribunal for proceedings initiated in another state." Proceedings for the establishment of child support and the determination of parentage are both within the ambit of the UIFSA. MCL 552.1301(2)(a) and (f). MCL 552.1301(3) provides that a proceeding authorized by the act may be filed in either the initiating

tribunal or "in a tribunal of another state that has or can obtain personal jurisdiction over the respondent."

Here, the proceeding was commenced by filing a petition in the Macomb Circuit Court seeking determinations with regard to respondent's paternity[4] and child support obligations. As noted, MCL 552.1301(2)(a) and (f) provide authority for such proceedings and MCL 552.1301(3) permits "[a]n individual petitioner or a support enforcement agency" to begin a proceeding for purposes authorized by the act "by filing a petition in an initiating tribunal for forwarding to a responding tribunal." Given this clear statutory language, we conclude that the Macomb Circuit Court—"a tribunal for this state"—had subject-matter jurisdiction to entertain and decide petitioners' child support petition under the UIFSA.

Despite the plain language of the UIFSA, petitioners argue that the trial court was precluded from addressing the child support issue (raised by a petition that *petitioners* filed in the trial court) because the New York court did not follow New York law by entering an order of child support when it determined that respondent was the child's father. Petitioner LME did not appeal the New York court's decision; instead she came to Michigan and sought to obtain a child support order in this state. If petitioner LME was dissatisfied with the decision of the issuing tribunal concerning the order of filiation it entered, or with its refusal—in a separate order—to order child support, she should have appealed that decision within the New York appellate system. We do not sit as an appellate court to review the decisions of our sister states.

---

[4] Although the paternity question had already been resolved in New York, petitioners' form complaint initiating this action requested that the "responding jurisdiction" should establish paternity.

Petitioners have failed to point this Court to any provision of the UIFSA that gives the circuit courts of this state the authority to order the courts of a sister state to perform a particular action, such as ordering child support. We will not search for authority to sustain petitioners' argument. *Mudge v Macomb Co,* 458 Mich 87, 104-105; 580 NW2d 845 (1998), quoting *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959). MCL 552.1201 provides authority for the circuit courts of this state to exercise personal jurisdiction over nonresidents. MCL 552.1221 and MCL 552.1301(2)(a) and (3) provide authority to petitioners to commence a proceeding to establish child support in this state's courts. Petitioners chose to utilize this authority. Because the Macomb Circuit Court had subject-matter jurisdiction over petitions for child support filed under the UIFSA, we reject petitioners' challenge to the authority of the trial court.

### III. FORFEITURE OF CLAIM REGARDING RES JUDICATA EFFECT OF NEW YORK PATERNITY DECISION

Petitioners further argue that the trial court's dismissal of petitioners' petition with prejudice has resulted in "effectively barring [petitioners] from having [respondent] as the legal father, as well as barring [petitioners] from establishing child support, in New York. The child in the case at bar is a legally fatherless child at this time." Petitioners contend that the dismissal of their support petition by the trial court "effectively set aside the April 3, 2001, Order of Filiation and the April 3, 2001 Short Order [the order declining to determine child support]." This contention is simply incorrect.

An order of filiation was entered by the New York court; it was not appealed. Respondent did not contest in New York, and has not contested in this state, that he

is the father of the child. The trial court's dismissal of the child support petition did not change the fact—nor did it even purport to address—the prior determination of the New York court that respondent is the child's father.

Petitioners nevertheless claim that the doctrine of res judicata prevented the trial court from adjudicating the issue of child support. Petitioners argue that New York had continuing jurisdiction with regard to the issue of child support and this precluded the trial court from making any determination concerning this issue —despite the fact that the issue was presented in an action commenced by *petitioners*. The simple answer to this claim is that petitioners did not raise this claim in the trial court; instead, they asked the court to consider the question of child support and to order such support. To preserve this claim for appellate review, petitioner should have objected on this basis in the trial court. Failure to do so constitutes a forfeiture of the claim on appeal. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents,* 444 Mich 211, 234; 507 NW2d 422 (1993). Furthermore, "[a] party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Blazer Foods, Inc v Restaurant Properties, Inc,* 259 Mich App 241, 252; 673 NW2d 805 (2003), quoting *Living Alternatives for the Developmentally Disabled, Inc v Dep't of Mental Health,* 207 Mich App 482, 484; 525 NW2d 466 (1994). We therefore decline to consider this forfeited claim.

### III. FULL FAITH AND CREDIT

Petitioners next contend that the trial court failed to give full faith and credit[5] to the New York court's

---

[5] US Const, art IV, § 1.

order of filiation. Petitioners again claim that when the trial court dismissed the petition with prejudice, "it effectively vacated and set aside the April 3, 2001, Order of Filiation." Respondent acknowledged in his answer to petitioners' pleadings that he had been determined to be the child's father and petitioners fail to point to any language in the trial court's order that set aside the New York court's determination of parentage.

Moreover, petitioners raised this issue in their answer to respondent's motion to seal the court file. This answer was filed over two months *after* the trial court entered its opinion and order denying child support. Therefore, the issue was not timely raised before the trial court and we decline to consider it. *Booth, supra* at 234-235. Even if we were to consider this unpreserved constitutional claim, we would conclude that it is without merit.

The Full Faith and Credit Clause, US Const, art IV, § 1, provides, in relevant part, that "Full Faith and Credit shall be given in each State to the Public Acts, Records, and judicial Proceedings of every other State." The purpose of the Full Faith and Credit Clause "is to prevent the litigation of issues in one state that have already been decided in another." *Martino v Cottman Transmission Systems, Inc,* 218 Mich App 54, 58; 554 NW2d 17 (1996). As we have concluded, the trial court gave full faith and credit to the New York court's order of filiation. In fact, the premise underlying the trial court's decision is that respondent *is* the child's father, but that he ought not to be liable for child support because of the circumstances surrounding the child's conception. Additionally, the New York court did not decide the issue of child support; therefore, there was

no decision regarding support to which full faith and credit could be given. Therefore, petitioners' argument is meritless.

Petitioners next contend the trial court violated their rights to equal protection,[6] as well as the child's equal protection rights because the trial court refused to order child support on the basis that the child was born out of wedlock as a result of LME's act of criminal sexual conduct. Petitioners argue that the statute concerning child support does not differentiate between children born as a result of noncriminal sexual intercourse and those resulting from acts of criminal sexual intercourse. Petitioners claim instead that this Court has repeatedly indicated that the child support laws apply to all children, regardless of the way in which they were conceived, and that the purpose of these laws is not to penalize anyone, but instead to obtain support for these children from their noncustodial parents. We disagree that petitioners' right to equal protection was violated, but we find that the child support law does, indeed, apply to respondent despite the manner in which the child was conceived.

Both in the trial court and on appeal, petitioners have failed to make a coherent, case-law-supported argument establishing that the trial court's consideration of the circumstances surrounding the child's conception constituted a violation of their right to equal protection. Ordinarily, "[i]t is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover

---

[6] US Const, Am XIV; Const 1963, art 1, § 2.

and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham, supra* at 203. Because of the inadequate treatment given this argument by petitioners, we could decline to consider it. *Meagher v Wayne State Univ,* 222 Mich App 700, 716; 565 NW2d 401 (1997).

Nevertheless, petitioners' essential argument is that the trial court failed to follow the child support law. To the extent this issue was not properly raised on appeal, we have held that we may choose to "address any issue that, in the court's opinion, justice requires be considered and resolved." *Paschke v Retool Industries (On Rehearing),* 198 Mich App 702, 705; 499 NW2d 453 (1993), rev'd on other grounds 445 Mich 502; 519 NW2d 441 (1994). The underlying claim here is one of first impression in this state and is of great importance. We therefore conclude that it is appropriate for us to determine whether the trial court correctly decided not to order child support because the child was conceived as a result of an act of criminal sexual conduct in which respondent was the victim.

Respondent argued that he was the victim of an act of criminal sexual conduct committed by LME because he was fourteen years old when she induced him to have sexual intercourse. He reasoned that because he was under the age of consent, his participation was legally involuntary.[7] This argument confuses two distinct legal concepts. Because of his age at the time of the sexual conduct, the law refuses to permit the adult in the

---

[7] Respondent claimed that LME plied him with alcohol and the promise of sex with an older woman to induce him to engage in sexual intercourse with her; there is no support in the record for this allegation so we need not consider it. *Hawkins v Murphy,* 222 Mich App 664, 670; 565 NW2d 674 (1997). However, we note that this claim does not assist respondent's argument that the sexual relationship was not consensual.

relationship to claim consent as a defense. *People v
Gengels,* 218 Mich 632, 641; 188 NW 398 (1922) ("Proof
of consent is no defense, for a female child under the
statutory age is legally incapable of consenting.");
*People v Bennett,* 45 Mich App 127; 205 NW2d 831
(1973) (fourteen-year-old boy incapable of giving legal
consent to act of taking indecent liberties). Therefore,
even if respondent were a willing participant in the
sexual intercourse, LME could still have been charged
with, at least, third-degree criminal sexual conduct.
MCL 750.520d(1)(a) (victim at least thirteen years of
age, but under sixteen years of age).

. However, the issue presented by this case is not
LME's criminal culpability for criminal sexual conduct,
or whether respondent was—or could have been—a
"consensual" participant in that activity. Rather, we are
concerned with whether respondent may be liable for
child support for the child that resulted from the sexual
activity. Child support is not imposed to penalize or
victimize either parent. "The purpose of child support is
to provide for the needs of the child." *Macomb Co Dep't
of Social Services v Westerman,* 250 Mich App 372, 377;
645 NW2d 710 (2002), citing *Evink v Evink,* 214 Mich
App 172, 176; 542 NW2d 328 (1995). "Child support is
not imposed for the benefit of the custodial parent, but
rather to satisfy the present needs of the child." *Pellar
v Pellar,* 178 Mich App 29, 35; 443 NW2d 427 (1989).[8]

Guidance regarding this determination may be de-
rived from the decisions of sister states that have
confronted this issue. The courts that have considered

---

[8] This Court has concluded that the securing of support for children is
so important that it has held that even where a parent voluntarily
releases his parental rights, he is still liable to pay support for the child
as long as the child's custody remains with the other biological parent.
*Evink, supra* at 176.

this issue have uniformly concluded that the fact that a child results from the criminal sexual act of an adult female with a minor male does not absolve the minor from the responsibility to pay child support.

For example, in *Schierenbeck v Minor,* 148 Colo 582; 367 P2d 333 (1961), a twenty-year-old female (who was married to another man) had sexual relations with the plaintiff with the result that a child was born. The Colorado Supreme Court rejected any suggestion that the plaintiff's third-degree rape by the adult female excused his liability to provide for the support of his child and stated:

> Certain it is that his assent to the illicit act does not exclude commission of the statutory crime, but it has nothing to do with assent as relating to progeny. His youth is basic to the crime; it is not a factor in the question of whether he is the father of Sherrie Lynn.
>
> "The putative father may be liable in bastardy proceedings for the support and maintenance of his child, even though he is a minor   *   *   *   ." 10 C.J.S. Bastards § 53, page 152. If Schierenbeck is adjudged to be the father of Sherrie Lynn after a proper hearing and upon sufficient evidence, he should support her under this fundamental doctrine. [*Id.* at 586.]

The Wisconsin Court of Appeals in *In re Paternity of JLH,* 149 Wis 2d 349; 441 NW2d 273 (1989), rejected the claim that a fifteen-year-old boy who had intercourse with an eighteen-and-a-half-year-old female was absolved of responsibility to support the resultant child because he was a victim of a sexual assault and the female should not be permitted to benefit from her crime. The court stated:

> We reject appellant's argument that his paying child support to L.H. would permit her to benefit from her crime. Even assuming that L.H. criminally assaulted appellant, child support is paid to benefit the child, not the custodial

parent. The custodial parent receives support payments in trust to be used for the child's welfare. [*Id.* at 358.]

The Illinois Court of Appeals rejected a similar claim in *In re the Parentage of JS,* 193 Ill App 3d 563; 550 NE2d 257 (1990). The respondent in that case claimed that Illinois public policy protected him, as a minor, from the consequences of his "improvident conduct." The court disagreed and stated:

> We note that contrary to the respondent's position, Illinois public policy has never offered blanket protection to reckless minors. At the same time, Illinois public policy has recognized the blanket right of every child to the physical, mental, emotional, and monetary support of his or her parents. The public has an interest in protecting children from becoming wards of the state.
>
> In the instant case, we find that the public policy mandating parental support of children overrides any policy of protecting a minor from improvident acts. [*Id.* at 565 (citations omitted).]

See also *Commonwealth v A Juvenile,* 387 Mass 678, 680; 441 NE2d 1155 (1982) (juvenile is required to support his or her illegitimate child; "The illegitimate child has interests, as does the Commonwealth.").

In *Mercer Co Dep't of Social Services v Alf M,* 155 Misc 2d 703; 589 NYS2d 288 (1992), the county family court rejected the respondent's argument that because he was technically the victim of a crime (he was sixteen when he had sexual relations with the child's mother, who was twenty-one at the time), he should not be held legally responsible to support the child. The court responded:

> Respondent father's recourse under the law as to the mother of the child in this matter, was to file criminal charges against her. To penalize this child for the mother's actions would run contrary to the fundamental purpose of

this proceeding as established by statutory and case law. This Court is not concerned with the child's mother's actions but rather protecting the best interests of and insuring that adequate provision will be made for, the child's needs. [*Id.* at 705-706.]

Citing *In re Parentage of JS, supra,* and *Commonwealth v A Juvenile, supra,* the Kansas Supreme Court in *State ex rel Hermesmann v Seyer,* 252 Kan 646; 847 P2d 1273 (1993), held that the state could require that the thirteen-year-old juvenile father pay for the support of the child that resulted from his sexual intercourse with his seventeen-year-old babysitter. The Court stated:

This State's interest in requiring minor parents to support their children overrides the State's competing interest in protecting juveniles from improvident acts, even when such acts may include criminal activity on the part of the other parent. Considering the three persons directly involved, Shane, Colleen, and Melanie, the interests of Melanie are superior, as a matter of public policy, to those of either or both of her parents. This minor child, the only truly innocent party, is entitled to support from both her parents regardless of their ages. [*Id.* at 654-655.]

The California Court of Appeals in *San Luis Obispo Co v Nathaniel J,* 50 Cal App 4th 842; 57 Cal Rptr 2d 843 (1996), considered a case where the father was fifteen and the mother thirty-four when their consensual sexual relations resulted in the birth of a child. The mother was convicted of unlawful sexual intercourse with a minor and the father then claimed that he was not required to pay child support because he was the victim of a statutory rape. The court rejected this claim. The court observed that the father engaged in consensual sexual intercourse five times over a two-week period, noted that "[o]ne who is injured as a result of criminal conduct in which he willingly participated is

not a typical crime victim," and concluded that he was not a victim of sexual abuse. *Id.* at 845. After taking cognizance of the decisions in other states upholding orders for child support involving minor males who had been the victims of unlawful sexual intercourse, the court concluded that it agreed with the reasoning and holdings of those decisions.

In *Jevning v Cichos,* 499 NW2d 515 (Minn App, 1993), Jevning had a child after having sexual intercourse with Cichos when she was twenty and he was fifteen years old. Cichos argued that he should not be required to pay child support because he was the victim of criminal sexual conduct. The Minnesota Court of Appeals disagreed and reasoned:

> Statutory nonconsent under some definitions of criminal sexual conduct does not translate to a holding that on the civil issue of child support, minors can never be held responsible for their children resulting from sexual conduct. Generally, minors are responsible for their actions; exceptions to that principle are rare. For instances, minors are generally accountable for their economic transactions, allowed to sue and can be sued, are accountable for acts of juvenile delinquency, and may be certified to be tried as adults, depending on the circumstances. [*Id.* at 518.]

See also *SF v State ex rel TM,* 695 So 2d 1186, 1189 (Ala App, 1996) (the child is an innocent party and the purpose behind the state parentage act is to provide for the welfare of the child; "any wrongful conduct on the part of the mother should not alter the father's duty to provide support for the child"); *Hamm v Office of Child Support Enforcement,* 336 Ark 391, 398; 985 SW2d 742 (1999) (accepting general rule that "father who had been below the age of consent for sexual intercourse under criminal sexual conduct statutes at the time of conception is liable for supporting the child resulting from that union").

We agree with these authorities. The record indicates that respondent participated in the act of sexual intercourse that resulted in the conception of BME. Respondent is not absolved from the responsibility to support the child because LME was technically committing an act of criminal sexual conduct. The public policy of this state seeks to secure support for children. Contrary to respondent's view, LME does not "profit" from her criminality. "Child support is not imposed for the benefit of the custodial parent, but rather to satisfy the present needs of the child." *Pellar, supra* at 35. We recognized in *Pellar* that "[t]he needs of the child are of overriding importance." *Id.* This important public policy is furthered by requiring respondent to pay child support. The trial court erred by refusing to award child support on the basis that respondent was the "victim" of an act of criminal sexual conduct. We therefore reverse the order denying child support and remand this case to the trial court for a hearing to determine the proper amount of support respondent should be required to contribute.

## V. DUE PROCESS

Petitioners also claim a denial of due process because the trial court dismissed the request for child support with prejudice. Because of our disposition of the previous issue, it is unnecessary to address this constitutional claim. *Booth Newspapers, Inc, supra* at 234. In any event, we note that petitioners have failed to cite any supporting authority for their under-developed due process claim and, for this additional reason, we decline to consider it. *Wilson v Taylor,* 457 Mich 232, 243; 577 NW2d 100 (1998) ("a mere statement without authority is insufficient to bring an issue before this Court").

## VI. TERMINATION OF PARENTAL RIGHTS

Petitioners finally claim that the trial court's dismissal of the case constituted a termination of respondent's parental rights. Petitioners did not raise this issue in the trial court and therefore it is not preserved for appellate review. *ISB Sales Co v Dave's Cakes,* 258 Mich App 520, 532-533; 672 NW2d 181 (2003). In any event, this case does not involve a termination of parental rights and nothing in the record or the trial court's order indicates that respondent's parental rights were terminated. Moreover, respondent, rather than petitioners, is the proper party to raise this claim; after all, the issue involves *his* parental rights, not those of petitioner LME. *In re Foster,* 226 Mich App 348, 358; 573 NW2d 324 (1997) ("In order to have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected."). Respondent has not claimed that his parental rights have been terminated.

Reversed and remanded for determination of the proper amount of child support due from respondent. We do not retain jurisdiction.

BORRELLO, J., concurred.

SCHUETTE, J. (*concurring*). I join in the opinion of Judge OWENS, which reverses the trial court's decision, remands for a hearing, and requires the entry of an order for child support. In the absence of any contrary directives by the Legislature, the public policy of the state of Michigan provides that child support is for the benefit and needs of the child involved. *Macomb Co Dep't of Social Services v Westerman,* 250 Mich App 372, 377; 645 NW2d 710 (2002), citing *Evink v Evink,* 214 Mich App 172, 175-176; 542 NW2d 328 (1995). With

respect to the requirement of payment of child support, Michigan law does not contain any exceptions based on consensual or nonconsensual sexual activity that results in a child being conceived, or on whether a participant was coerced, seduced, or victimized. In the case before this court, as more fully explained at note 7 in Judge OWENS's opinion, the record does not appear to contain any evidence of respondent's allegations of alcohol-induced activities and other sexual promises that might lead to a different conclusion had the Legislature so provided.