*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* JACM, also known as JACB, Minor.

---

| | |
|---|---|
| STEPHANIE LYNN MCINTOSH, | UNPUBLISHED |
| | May 21, 2025 |
| Petitioner-Appellant, | 9:12 AM |
| | |
| v | No. 371423 |
| | Kent Circuit Court |
| MICHIGAN CHILDREN'S INSTITUTE, | Juvenile Division |
| | LC No. 24-028411-AM |
| Respondent-Appellee. | |

---

*In re* ASLM, Minor.

---

| | |
|---|---|
| STEPHANIE LYNN MCINTOSH, | |
| | |
| Petitioner-Appellant, | |
| | |
| v | No. 371462 |
| | Kent Circuit Court |
| MICHIGAN CHILDREN'S INSTITUTE, | Juvenile Division |
| | LC No. 24-028410-AM |
| Respondent-Appellee. | |

---

Before: PATEL, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

-1-

In these consolidated appeals,[1] petitioner appeals by right the trial court's order dismissing her petition to adopt. More specifically, petitioner challenges the trial court's denial of her motion, filed under MCL 710.45, asserting that respondent Michigan Children's Institute's (MCI) decision to withhold consent for adoption was arbitrary and capricious. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of petitioner's attempt to adopt her minor grandchildren, ASLM and JACM, after the parental rights of the children's parents were terminated. Petitioner is the children's maternal grandmother. The children were removed from their birth mother's care by the Department of Health and Human Services (DHHS) in August 2019. ASLM was six years old, and JACM was 18 months old, at the time of removal. After the children were removed, they were initially placed with JACM's paternal aunt. The children lived with the aunt until January 2020, when they were placed with a nonrelative foster family. All parental rights to the children were terminated in April 2022. After termination, petitioner and the children's foster family each requested consideration for adoption.

The MCI superintendent denied petitioner's request for consent to adopt. The superintendent's written decision detailed the significant physical, mental, behavioral, and educational issues exhibited by the children, as well as the services provided to address those issues. The decision concluded that, although petitioner appeared to be well-intentioned and loved her grandchildren, there were concerns about her ability to ensure the children's emotional, physical, developmental, and educational well-being on a permanent basis. The children had been placed with the same foster family for over four years. The children were happy, had positive attachment to their caregivers, and all of their needs were met. The superintendent believed that removing the children from this home and placing them in another home would likely cause them unnecessary trauma.

Petitioner filed a motion in the trial court, under MCL 710.45, asserting that MCI's decision was arbitrary and capricious. After holding a hearing, the trial court granted MCI's motion for involuntary dismissal under MCR 2.504(B)(2), denied petitioner's motion, and dismissed the petition to adopt. This appeal followed.

## II. STANDARD OF REVIEW

"Pursuant to MCL 710.45, a family court's review of the superintendent's decision to withhold consent to adopt a state ward is limited to determining whether the adoption petition has established clear and convincing evidence that the MCI superintendent's withholding of consent was arbitrary and capricious." *In re Keast*, 278 Mich App 415, 423; 750 NW2d 643 (2008).

---

[1] Docket No. 371423 concerns petitioner's application to adopt JACM, while Docket No. 371462 concerns petitioner's application to adopt ASLM. This Court consolidated the appeals "to advance the efficient administration of the appellate process." *In re JACM Minor*, unpublished order of the Court of Appeals, entered July 30, 2024 (Docket Nos. 371423 and 371462).

"Whether the family court properly applied this standard is a question of law reviewed for clear legal error." *Id*.

## III. ANALYSIS

Petitioner asserts that the MCI decision was arbitrary and capricious. We disagree.

"The MCI superintendent represents the state of Michigan as guardian of all children committed to the state by a family court after termination of parental rights." *Id*. See also MCL 400.203(1). According to MCL 400.209(1), the superintendent is authorized to consent to the adoption of any child committed to the institute. The superintendent's consent is required before the court can approve a petition for adoption. MCL 710.43(1)(b). If a person seeking to adopt is unable to obtain the superintendent's consent, he or she "may file a motion with the court alleging that the decision to withhold consent was arbitrary and capricious." MCL 710.45(2).

MCL 710.45 provides in relevant part:

> (2) If an adoption petitioner has been unable to obtain the consent required by [MCL 710.43](1)(b), (c), or (d) of this chapter, the petitioner may file a motion with the court alleging that the decision to withhold consent was arbitrary and capricious. A motion under this subsection shall contain information regarding both of the following:

> (a) The specific steps taken by the petitioner to obtain the consent required and the results, if any.

> (b) The specific reasons why the petitioner believes the decision to withhold consent was arbitrary and capricious.

> \* \* \*

> (7) Unless the petitioner establishes by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious, the court shall deny the motion described in subsection (2) and dismiss the petition to adopt.

> (8) If the court finds by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious, the court shall issue a written decision and may terminate the rights of the appropriate court, child placing agency, or department and may enter further orders in accordance with this chapter or section 18 of chapter XIIA as the court considers appropriate. In addition, the court may grant to the petitioner reimbursement for petitioner's costs of preparing, filing, and arguing the motion alleging the withholding of consent was arbitrary and capricious, including a reasonable allowance for attorney fees.

"[T]he family court is not permitted to decide the adoption issue de novo, but rather must determine whether there is clear and convincing evidence that the decision maker acted arbitrarily and capriciously." *In re Keast*, 278 Mich App at 424. "Arbitrary" means "determined by whim

or caprice," "arrived at through an exercise of will or caprice, without consideration or adjustment with reference to principles, circumstances, or significance," or "decisive but unreasoned." *Id.* (quotation marks and citation omitted); see also *Goolsby v Detroit*, 419 Mich 651, 678; 358 NW2d 856 (1984). "Capricious" is defined as "apt to change suddenly; freakish; whimsical; humorsome." *In re Keast*, 278 Mich App at 424-425 (quotation marks and citation omitted).

The "focus of the hearing is on the reasons given for withholding consent to the adoption." *Id.* at 425. "It is the absence of any good reason to withhold consent, rather than the presence of good reasons to grant it, that indicates that the decision maker has acted arbitrarily and capriciously." *Id.* More specifically,

> the focus is not whether the representative made the "correct" decision or whether the probate judge would have decided the issue differently than the representative, but whether the representative acted arbitrarily and capriciously in making the decision. Accordingly, the hearing under § 45 is not . . . an opportunity for a petitioner to make a case relative to why the consent should have been granted, but rather is an opportunity to show that the representative acted arbitrarily and capriciously in withholding that consent. It is only after the petitioner has sustained the burden of showing by clear and convincing evidence that the representative acted arbitrarily and capriciously that the proceedings may then proceed to convincing the probate court that it should go ahead and enter a final order of adoption. [*Id.* (quotation marks and citation omitted; alteration and ellipsis in original).]

"Michigan authority is clear that the court is to determine if there is any good reason to support the MCI Superintendent's decision; if so, the decision must be upheld." *In re Tem*, 343 Mich App 171, 179; 996 NW2d 850 (2022).

In this case, the superintendent considered four factors in her written decision: the length of time the children had lived in a stable, satisfactory environment and the desirability of maintaining continuity; the willingness and ability of a relative to ensure the physical and emotional well-being of the children on a permanent basis; the psychological relationship that existed between the children and the prospective adoptive parent; and the ability and willingness of the prospective adoptive parent to adopt siblings of the children.

The superintendent's decision primarily focused on the second factor, the willingness and ability of a relative to ensure the physical and emotional well-being of the children on a permanent basis. The superintendent noted that the children all exhibited emotional, behavioral, educational, and medical challenges as a result of trauma exposure in the birth home. The decision detailed the children's specific medical and mental diagnoses, as well as the services the children received to address those diagnoses; it went on to address petitioner's family, criminal, and Children's Protective Services (CPS) history. In addition, the decision noted petitioner's limited relationship with the children after they were removed. She did not see the children between December 2020 and October 2022. Petitioner had four visits with the children from October 2022 until February 2023. The visits were stopped in February 2023 because ASLM's behaviors "significantly escalated" to the extent that she was admitted into a psychiatric facility.

As stated, the superintendent, after a thorough and detailed analysis, concluded that, although petitioner appeared to be well-intentioned and loved the children, concerns existed about her ability to ensure the children's emotional, physical, developmental, and educational well-being on a permanent basis. The decision noted that the children had been placed with the same foster family for over four years, were happy, had a positive attachment to their caregivers, and all of their needs were met. The superintendent believed that to remove the children from their foster home would likely cause them unnecessary trauma.

Petitioner has not shown that the superintendent's decision was arbitrary and capricious. The superintendent's decision focused on petitioner's ability to ensure the physical and emotional well-being of the children on a permanent basis. The children have serious medical and mental-health issues that are being addressed by the foster parents. The children—who were 10 years old and 6 years old at the time of the decision—had lived with their foster family for over four years, while petitioner had seen them only four times since December 2020, with the last visit occurring in February 2023, more than a year before the date of the decision. Accordingly, the trial court properly concluded that the finding was not arbitrary and capricious, and denied the motion challenging the decision. See *id*.

Petitioner's arguments to the contrary are not persuasive. She points out that she had expressed interest in fostering the children when they were removed from their birth mother; however, she claims that "MCI failed to make a decision in a timely manner." She states that she submitted her application for the adoption of her grandchildren in August 2022, but that MCI did not decide it until February 2024. She further alleges that the MCI did not attempt to place the children with relatives. Rather, she submits that the MCI falsified information against the children's relatives while withholding negative information about the foster family.

Petitioner appears to be conflating DHHS's initial removal and placement of the children with the MCI superintendent's consideration of her petition to adopt following the termination of parental rights. After the children were removed from their mother, they were in fact placed with relatives—JACM's paternal aunt. However, the children were later moved to the nonrelative foster home. The record before this Court does not indicate the reason for the change. In any event, the children's placement following removal was not at issue at the hearing in this case. See *id*. at 178. Moreover, there is nothing in the record to suggest that the MCI superintendent's decision concerning adoption was untimely, or that the superintendent improperly used negative information against the children's relatives while disregarding negative information concerning the foster family.

In addition, a significant portion of petitioner's argument concerns her claim that the foster home is unsuitable for the children. As the trial court observed, many of her claims—such as that the children's birth mother moved into the foster home following termination, CPS investigations involving the foster family, and behavioral issues allegedly exhibited by the foster parents' biological son—are not substantiated by any evidence in the record.

Petitioner also argues that the children did not exhibit physical, mental, or behavioral issues before being placed in foster care. In other words, it appears that petitioner's argument is that the foster family caused or exacerbated these issues. However, as the superintendent indicated, the children had been dealing with these issues for some time, in some cases from birth. There is

nothing in the record that supports petitioner's claim that any of these issues began after the children were placed in foster care. Moreover, the superintendent noted that some of the children's issues improved after participating in services—such as ASLM's tantrums, which decreased in length after she attended therapy. The superintendent also observed that ASLM was no longer wearing pull-ups at night and that she was doing well with toileting during the day. JACM returned to group occupational therapy to address his hyperactivity and anger concerns.

Additionally, petitioner had not had overnight visits with the children since 2020. She testified that the children lived with her for a time before they were removed from the birth mother. However, she did not elaborate on when this occurred or how long the children were placed with her. As a result, it is unclear how familiar petitioner was with the children's medical and mental issues before they were placed with the foster family. In any event, the children were young when they were removed from their mother—ASLM was six years old, and JACM was $1^1/_2$ years old. It is reasonable that some of the children's struggles were discovered as they grew and started attending school. And petitioner's characterization of the children's significant special needs as being caused by their foster placement casts doubts on her ability to manage those needs if they were in her care and custody.

Petitioner also argues that the superintendent considered improper information about petitioner in the decision. We disagree. The decision detailed petitioner's criminal and CPS history. It also included information about the criminal history of her ex-husband. However, even though petitioner had a conviction expunged from her record, was not currently listed on the CPS registry, and was divorced, the information does not appear to be inaccurate. It was reasonable for the superintendent to consider petitioner's history while considering an application for adoption. Moreover, the trial court accepted that petitioner did not have any current criminal convictions, that she was not listed on the CPS registry, and that she was unmarried, yet still upheld the superintendent's decision. We agree with the trial court that any minor errors in the recitation of petitioner's criminal history, CPS history, or martial status did not render the superintendent's decision arbitrary and capricious. See *Keast*, 278 Mich App at 425.

Petitioner also appears to argue that the trial court did not allow discovery of relevant evidence. She states that she requested discovery as to how the MCI obtained information contained in the decision. However, the record does not show that petitioner asked for any discovery. Rather, she moved to quash MCI's response to her motion on the ground that information concerning her criminal and CPS history was not true. The trial court denied the motion to quash, but allowed petitioner to admit exhibits to contradict the alleged false information. Petitioner does not explain what additional discovery she should have received or how additional discovery would have altered the outcome of the hearing. "Ordinarily, it is not enough for an appellant in [her] brief simply to announce a position or assert an error and then it up to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate [her] arguments, and then search for authority either to sustain or reject [her] position." *LME v ARS*, 261 Mich App 273, 286-287; 680 NW2d 902 (2004) (quotation marks and citation omitted).

Ultimately, petitioner argues that the superintendent should have granted her request for adoption instead of that of the foster family. However, such an argument does not amount to establishing that the decision was arbitrary and capricious. See *Keast*, 278 Mich App at 425. The superintendent's decision was supported by solid reasoning. See *Tem*, 343 Mich App at 179. As

a result, the trial court properly granted the MCI's motion to dismiss. See *Keast*, 278 Mich App at 423.

Affirmed.[2]

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

---

[2] To the extent that petitioner has attempted to argue that she was discriminated against and that her constitutional rights were violated, she does not identify the constitutional right or explain how that right was violated. See *LME*, 261 Mich App at 286-287. As a result, we decline to consider this argument.