# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. G. LOSSING, Minor.

UNPUBLISHED
March 28, 2017

No. 333635
Wayne Circuit Court
Family Division
LC No. 14-517133-NA

Before: RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating her parental rights to minor child PGL pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist and no likelihood that they will be rectified within a reasonable time), (g) (failure to provide proper care or custody and no reasonable expectation of providing proper care and custody within a reasonable time), and (j) (reasonable likelihood of harm if child is returned to parent's home). We affirm.

## I. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred when it found clear and convincing evidence to support termination of her parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree.

This Court reviews for clear error the trial court's factual findings and ultimate determinations regarding the statutory grounds for termination. MCR 3.977(K); *In re Mason*, 486 Mich 142,152; 782 NW2d 747 (2010). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). For termination of parental rights, the trial court must find that at least one of the statutory grounds set forth in MCL 712A.19b has been established by clear and convincing evidence. *In re Terry*, 240 Mich App 14, 21-22; 610 NW2d 563 (2000).

The trial court found that three grounds for termination of respondent's rights had been proven by clear and convincing evidence—MCL 712A.19b(3)(c)(*i*), (g), and (j). In relevant part, MCL 712A.19b(3) states:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

-1-

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

### A.  MCL 712A.19b(3)(c)(*i*)

MCL 712A.19b(3)(c)(*i*) requires the court to assess the circumstances that led to the adjudication and determine whether those circumstances have been resolved or are reasonably likely to be rectified within a reasonable time.  See, e.g., *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).  The determination of what is reasonable includes both how long it will take for the parent to improve and how long the child can wait for the improvement.  *Id.*

It is undisputed that more than 182 days had passed since the trial court's initial dispositional order was entered in this matter.  Further, we are not convinced that the trial court made a mistake when it determined that the conditions that led to the adjudication persisted.  One issue was domestic violence.  Both respondent's foster care worker, Taylor Archer, and PGL's Infant Mental Health therapist, Jessica Hendon, testified about their reasons for suspecting that respondent was still dealing with domestic violence, and even if their claims, alone, did not rise to the level of "clear and convincing evidence," domestic violence was not the sole reason for the adjudication.  The adjudication hearing also addressed issues involving respondent's criminal history, housing, and lack of income.  Despite respondent's often commendable attempts to meet the requirements of her court-ordered treatment plan, a number of these barriers to reunification still existed nearly two years after PGL's removal.  Respondent had not obtained suitable housing, and as the trial court aptly noted, her babysitting and food-stamp income was enough to "support herself sort of right now if she's couch surfing and raiding other people's refrigerators," but not enough to "support herself and the child with the kind of housing she has and the kind of income she has[.]"  Although respondent had no new criminal charges, she violated her probation twice and spent time in jail.  We sympathize with respondent's inability to pay for the

drug screens related to probation, but the fact that she could not afford the screens tends to prove that respondent's income was inadequate to provide a child with proper care.

As the trial court observed, there was simply no evidence that respondent would eradicate the pertinent issues within a reasonable time. Considering the totality of the evidence, we are not convinced that the trial court made a mistake when it found clear and convincing evidence to support termination of respondent's parental rights under MCL 712.19b(3)(c)(*i*).

### B. MCL 712A.19b(3)(g)

Termination of respondent's parental rights was also proper under MCL 712A.19b(3)(g). We note that a parent's failure to comply with a parent-agency agreement can be evidence of the parent's failure to provide proper care and custody. *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003).

In support of its determination with respect to this factor, the trial court relied in substantial part on respondent's demonstrated and continued inability to address PGL's unique needs:

> [M]om can't provide proper care or custody for this child. The workers have been trying lots of different ways, including very highly specialized ways to find things to deal with mom's problems.
>
> Each child that comes in the door is different. Each parent that comes in the door is different. And here we've seen the kind of specialized services provided to try and teach the mom to provide proper care for the child. And after a reasonable period of time I lose the belief that it's ever going to happen. And a reasonable period of time has passed.
>
> I find grounds under subsection (3)(G) [sic]. This child needs specific things from, very specialized specific tools. . . . Mom has actually had those tools and the comments from the workers is [sic] they don't stick.

The trial court's statements were supported by the record. Both Archer and Hendon expressed concerns regarding respondent's inability to parent PGL, especially in light of his special developmental needs. Respondent was often drowsy or distracted during her visits with PGL, and had trouble finding appropriate ways to interact with her son. In addition, respondent was not adequately addressing her mental illnesses, and over the two years of protective proceedings, was still "explosive" and "unpredictable" in her moods and behaviors. There was evidence that she was not taking her medication, and even on the final day of the termination hearing she had an "outburst" while speaking with Archer. Respondent's struggles with aggressive behavior were especially disconcerting, because PGL exhibited similar behaviors at school. PGL's behavior worsened after his visits with respondent, and while this escalation might be attributed to circumstances other than PGL's interactions with respondent, it is worth noting that respondent minimized PGL's behavioral problems and resisted advice on how to meet his special needs. Given that exposure to domestic violence and improper supervision were some of the reasons PGL was originally brought into custody, respondent's perpetually aggressive behavior,

coupled with her denial of PGL's needs, particularly demonstrates an inability to provide proper care and custody for her son. Although respondent complied with the participation requirements of her treatment plan, it is clear that she failed to benefit sufficiently from the services provided.

At the time of the termination hearing, respondent was still without adequate housing. She was not employed, and lived only off of food stamps and babysitting money. The record adequately demonstrated a failure to provide proper care or custody, and there was no evidence to show that respondent had the ability to address her persisting problems and provide adequate care for PGL within a reasonable time. The trial court did not clearly err when it found clear and convincing evidence to support termination pursuant to MCL 712A.19b(3)(g).

### C.  MCL 712A.19b(3)(j)

Much of the evidence discussed concerning MCL 712A.19b(3)(c)(*i*) and (g) established a reasonable likelihood that PGL would suffer harm if returned to respondent's care, and also supports termination of respondent's parental rights under MCL 712.19b(3)(j). The trial court considered the requirements for termination under this subsection and stated:

> Is there a reasonable likelihood that the child would be harmed if returned to the home of the parent? Well, there's a number of different concerns here. Does mom actually have a home to take the child home to? No. Would the child be harmed if the child couched [sic] surfed with mom, given that mom can't deal with the child's intellectual, developmental emotional needs? Is there a reasonable likelihood? Again, this is by clear and convincing evidence and I'll find the answer is yes.

We cannot say that the trial court erred in reaching this conclusion. Respondent's struggles with domestic violence, failure to maintain stable or adequate housing, unpredictable moods, and inability to adequately address PGL's emotional and behavioral needs represent continued risks of harm to PGL. Clear and convincing evidence supported the trial court's conclusion that, based on the conduct and capacity of respondent, there existed a reasonable likelihood that PGL would be harmed if returned to his mother's care. Therefore, termination of respondent's parental rights was proper under statutory subsection MCL 712A.19b(3)(j).

### II.  BEST-INTERESTS DETERMINATION

Next, respondent argues that the trial court erred when it found that termination of her parental rights was in PGL's best interests. Again, we disagree.

Pursuant to MCL 712A.19b(5), the "[t]rial court must order the parent's rights terminated if [petitioner] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White,* 303 Mich App 701, 713; 846 NW2d 61 (2014). This Court reviews for clear error a trial court's decision regarding whether termination is in the child's best interests. *Id.*

In considering whether termination of parental rights is in the best interests of the child, all available evidence on a wide variety of factors should be considered. *Id*. These factors may include a parent's history of domestic violence, the existence of a bond between the child and the parent, the parent's ability to parent, the child's need for permanency and stability, the parent's compliance with his or her service plan, the parent's visitation history with the child, and the child's well-being while in care. *Id*. at 713-714.

We are not definitely and firmly convinced that the trial court made a mistake when it found that termination of respondent's parental rights was in PGL's best interests. The trial court articulated a list of best-interests factors and carefully considered each one before reaching a final decision. Respondent places great emphasis on the parent-child bond. The trial court considered this bond, concluding: "This is a child who knows who mom is," but "[t]he bond has dropped off a great deal from where it was initially." Hendon, at the termination hearing, expressed the belief that PGL's bond to respondent was "insecure." At any rate, the existence of a bond, however strong, is but one factor to consider when deciding what action is in a child's best interests, and many other factors were at issue in the present case.

Respondent also argues that her completion of the court-ordered treatment plan "indicates that it is not in the best interest of the child to terminate." Although respondent appears to make a legal argument, she cites no authority for the proposition that completion of a treatment plan precludes a finding that a child's best interests lay in termination of parental rights, and this Court need not do so for her. *LME v ARS*, 261 Mich App 273, 283; 680 NW2d 902 (2004) ("We will not search for authority to sustain petitioners' argument.") Regardless, the trial court considered respondent's progress in completing her treatment plan, finding that, overall, she simply had not benefitted; the court stated, "different therapists have sequentially tried to get mom to deal with problems the child has and again the words that stick in my mind is they don't stick in the mom's mind."

The trial court considered PGL's need for permanence and stability, especially at such a critical stage of development, and found that it weighed in favor of termination. The trial court stated:

> All these experts here express an opinion say it just isn't working with mom. It's in the child's best interest to terminate and have the child adopted. The child is coming out of one of the periods that the experts talk about, it being particularly harmful for the child to have tumult. . . . [T]he child is almost four. The child is exiting the first of two periods where tumult, trauma to a child is particularly dangerous and damaging to brain development. There's still a need to -- there's still a strong emphasis on the need to prevent such damage if the court can do it.

The trial court acknowledged PGL's likelihood of adoption, given his young age and the fact that his "caregiver has been very clear that they [sic] wish to adopt." More importantly, it considered this likelihood in tandem with respondent's inability to address PGL's special needs:

> The child has specific problems and mom cannot deal with these things. And even when special efforts are made to give the mom the specific tools, not just one way to deal with the problem but another way to deal with the problem being

done repeatedly, in the words of the therapists, it doesn't stick. Yet, the caregiver does have the ability to do these things. This weighs very much in terms of there being a termination and adoption.

Given that PGL, who had "been in foster care for a [t]itanic period, almost half of [his] life," strongly needs a stable and nurturing environment, the trial court found that termination of respondent's parental rights was in PGL's best interests.

We are not definitely and firmly convinced that the trial court erred in its considerations or conclusions.

Affirmed.


/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood