*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re KESTER, Minors.

UNPUBLISHED
September 19, 2024

No. 368684
Huron Circuit Court
Family Division
LC No. 15-004467-NA

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating her parental rights to her minor children JK, CK, and HK under MCL 712A.19b(3)(b)(*ii*) (parent had opportunity to prevent physical injury or physical or sexual abuse but failed to do so). We affirm.

## I. FACTUAL BACKGROUND

On August 12, 2022, a Children's Protective Services (CPS) worker filed a second amended permanent custody petition on behalf of petitioner, the Michigan Department of Health and Human Services (DHHS), requesting that the trial court take jurisdiction over JK, CK, and HK under MCL 712A.2(b)(1) (failure to provide proper care and custody due to neglect or abandonment), and (2) (unfit home environment due to neglect), remove the children from respondent's care, and enter an order terminating respondent's parental rights.[1] The second amended petition did not include a citation to the subsection of MCL 712A.19b(3) under which petitioner sought termination, but its first amended petition referenced MCL 712A.19b(3)(b)(*i*), (b)(*ii*), and (j).

---

[1] This Court previously vacated the trial court's earlier order terminating respondent's parental rights under MCL 712A.19b(3)(j) as well as its order of adjudication and remanded for further proceedings. *In re Kester*, unpublished per curiam opinion of the Court of Appeals, issued July 28, 2022 (Docket No. 359141), slip op at 1, 8.

The second amended petition stated that all three children were removed from respondent's care in 2015 after they were physically abused by their father, Charles Kester ("father").[2]  Father had untreated mental health issues and a violent criminal history.  After the parents completed their services addressing, in part, respondent's failure to provide a safe environment for the children, they returned home.  Just a few months later, in August of 2016, CPS received a complaint that respondent's home was unsafe, which led to another CPS case being opened and later closed.

In March of 2020, CPS received a complaint from HK's school, alleging that father hit five-year-old HK on his bare bottom with a tree branch, leaving a bruise.  CPS workers went to respondent's home and advised her to take him to the hospital for an examination, which she did.  The second amended petition alleged that during this examination, medical staff asked HK how he received the bruise.  With his parents in the room, HK took a while to answer.  Then, without making eye contact, he whispered that he fell down the stairs.  But the bruising on HK's buttocks was consistent with being struck by a linear object.  After his parents left the room, a CPS worker interviewed HK.  HK then revealed that father spanked him with a "big" and "yellow" board, and added that his father also spanked his siblings with it.  HK reported that respondent "does nothing" when father spanks them.  The second amended petition alleged that CK also disclosed that her father spanks the children with the yellow board.  Similarly, JK told investigators that father spanked him with a board or a hand, and that respondent was aware of this.  The children were placed into foster care on March 3, 2020, and continue to reside there.  They were doing well in their placement and had bonded with their foster parents.

On May 21, 2021, CPS received a complaint alleging that respondent, who was having overnight visitation with the children, left them with their developmentally-disabled uncle Richard Kester ("Richard").  Respondent found Richard with his face in CK's naked lap.  The second amended petition alleged respondent, who served as Richard's co-guardian, directed him to leave immediately.  During CPS interviews, respondent denied that Richard sexually abused CK, but CK disclosed that Richard inappropriately touched her.

At a pretrial hearing, respondent made admissions and pleaded no contest to several of the second-amended petition's allegations.  The parties agreed that respondent's acknowledgments were sufficient to support the trial court exercising its jurisdiction.  The court found that, by a preponderance of the evidence, at least one or more allegations in the petition were true and sufficient to permit the court to assert jurisdiction over the matter.

Following a termination hearing, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), finding that respondent failed to protect her children from both physical and sexual abuse and that there was a reasonable likelihood that returning the children to her care would result in them suffering injuries or further abuse in the foreseeable future.  The trial court noted the testimony made it clear that father physically abused all three children and that respondent knew about it, but did not protect them, even though she could have.  The court also found that Richard sexually abused CK and that respondent failed to prevent the abuse when she had the opportunity to do so.  The court cited the trauma all three children suffered, including post-

---

[2] On August 18, 2021, father voluntarily relinquished his parental rights.

traumatic stress disorder (PTSD), CK's incontinence, and HK's fear of violence, as additional evidence that the children would be harmed if returned to respondent's care. The court noted that JK had been involved in 11 CPS investigations between 2014 and 2020, CK had been involved in nine CPS investigations between 2015 and 2020, and HK had been involved in eight CPS investigations between 2015 and 2020. The court stated CPS investigators had a "duty to warn" conversation with respondent and father in 2014, regarding Richard's presence in their home because of his history of criminal sexual conduct. The trial court also determined it was in the children's best interests to terminate respondent's parental rights.

## II. DEFECTIVE PLEA

Respondent argues the trial court erred when it found a statutory basis for jurisdiction was established through her plea. We disagree.

Petitioner contends that any issue with the jurisdictional basis for respondent's plea was waived. Waiver is "the intentional abandonment of a known right and it extinguishes any error." *LME v ARS*, 261 Mich App 273, 277; 680 NW2d 902 (2004) (citation omitted). See also *In re Archer*, 277 Mich App 71, 79; 744 NW2d 1 (2007). This Court has also held that a "[r]espondent cannot assign error on appeal something that she deemed proper in the lower court because allowing her to do so would permit [the] respondent to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) (citation omitted).

In this case, the record shows that the parties engaged in off-the-record discussions with the court over what portions of the 44-paragraph attachment to the second amended petition respondent would plead. Ultimately, respondent either admitted or did not contest 14 paragraphs, in whole or in part. At the conclusion of respondent's plea-taking, the trial court specifically inquired of petitioner's counsel: "Do you believe that there's a proper factual basis for the Court to take jurisdiction in this matter?" Petitioner's counsel responded, "I do . . . ." The court then separately inquired of respondent's counsel and the children's guardian ad litem, who both responded: "I agree."

It is not entirely clear whether an attorney's personal belief regarding the sufficiency of the plea's factual basis can insulate from appellate review a trial court's determination that sufficient evidence was adduced to allow the court to exercise its statutory jurisdiction over respondent's children.[3] We further note that on the day of respondent's plea, she also executed an advice-of-rights form, that stated: "I am aware appellate review is available to challenge a court's initial order of disposition following adjudication, and such a challenge can include any issues leading to disposition, including any errors in the adjudicatory process." In light of this broad language and respondent's counsel's response, we conclude that, even if respondent did not waive the issue, she is not entitled to relief on this claim.

To preserve the issue of a no-contest plea's validity or plea of admission's validity, a respondent must move to withdraw the plea in the trial court or otherwise object to the plea

---

[3] Respondent does not raise a claim that her counsel performed deficiently at the plea-taking.

procedures in the trial court. *In re Pederson*, 331 Mich App 445, 462; 951 NW2d 704 (2020). Because respondent did not move to withdraw her plea and did not object to the plea procedures in the trial court, this issue is unpreserved.[4]  Therefore, respondent must establish that "(1) error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected [her] substantial rights." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (quotation marks and citation omitted).  The error must also have seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.*

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).  The court determines whether to take jurisdiction of the child during the adjudicative phase; "[o]nce the court has jurisdiction, it determines during the dispositional phase what course of action will ensure the child's safety and well-being." *Id.*  A respondent may make an admission or a plea of no contest to allegations in a petition under MCR 3.971, which if accepted, establishes jurisdiction under MCL 712A.2(b). *In re Baham*, 331 Mich App 737, 745-746; 954 NW2d 529 (2020).  To exercise jurisdiction, the trial court must find that a statutory basis exists for jurisdiction under MCL 712A.2(b) and must establish support for this finding. *Id.* at 746.  Under MCR 3.971(D), a plea must be voluntary and accurate:

> (1) *Voluntary Plea.*  The court shall not accept a plea of admission or of no contest without satisfying itself that the plea is knowingly, understandingly, and voluntarily made.

> (2) *Accurate Plea.*  The court shall not accept a plea of admission or of no contest without establishing support for a finding that one or more of the statutory grounds alleged in the petition are true, preferably by questioning the respondent unless the offer is to plead no contest.  If the plea is no contest, the court shall not question the respondent, but, by some other means, shall obtain support for a finding that one or more of the statutory grounds alleged in the petition are true.  The court shall state why a plea of no contest is appropriate.

Respondent does not contend that her pleas of admission and no contest were involuntary or inaccurate.  Instead, respondent argues her pleas were insufficient to establish a statutory basis for the court to exercise jurisdiction over the children.  Respondent states that, outside of the demographic and historical facts she admitted, the remaining allegations pertained to father's actions, not her own actions, and allegations that DHHS received complaints.  She argues that none of the allegations she admitted demonstrate that she failed to protect her children.

---

[4] Though this Court recently eliminated the use of the plain-error test in civil cases, that decision "does not apply to termination of parental rights cases, which present different constitutional considerations." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 5 n 3.

Petitioner maintains that respondent's plea was sufficient to establish a statutory basis for the trial court to exercise jurisdiction over the children. Petitioner also asserts that several paragraphs from the second amended petition were sufficient to establish jurisdiction on their own.[5]

[5] Respondent admitted the following allegations: (1) she was the children's mother; (2) Charles was the children's biological and legal father; (3) on August 17, 2015, the children were removed from their care due to father's physical abuse of HK and "the unsafe home environment of [respondent]"; (4) after receiving services and showing benefit from those services, the children were returned on May 19, 2016; (5) on August 24, 2016, a CPS complaint, alleging that respondent's home was unsafe, was investigated; (6) respondent "was substantiated for physical neglect" and a case was opened; (7) on November 16, 2016, the court closed the foster care case; (8) on March 2, 2020, a CPS worker met privately with father, who initially denied hitting HK with the board; (9) after the CPS worker informed father that all three children reported being hit with a board, father admitted that he used a 1" x 3" board to hit HK in the buttocks two days ago; (10) according to father, HK was misbehaving and an attempted timeout failed; (11) father "then swatted [HK's] butt two times with his hand"; (12) when HK continued to misbehave, father grabbed a board and "swatted" HK's butt once; (13) father reported respondent was not home when this incident occurred; (14) on or about May 21, 2021, there was another CPS complaint, reporting that the children, who were in foster care, were staying at respondent's apartment for an unsupervised visit; (15) although the individual who made the complaint reported that respondent served as Richard's co-guardian and that Richard lived with respondent at night, respondent denied these assertions, but admitted that she was Richard's transporter and that Richard spent one night in her apartment; (16) the incident occurred about a week or two before the report was made, (17) respondent walked in on Richard, who had his face in seven-year-old CK's "naked lap"; (18) respondent had Richard leave the home immediately; (19) on or about August 5, 2022, respondent provided her version of what occurred between Richard and CK; (20) respondent said Richard spent the night in her apartment because his caretaker was due to give birth soon; (21) Richard slept on the couch and CK slept in respondent's room with respondent; (22) in the morning, CK got up and went into the living room; (23) when respondent came out of her room, CK was on the couch with her pants and underwear pulled down while Richard stood in the living room; (24) respondent directed CK to go to respondent's room and directed Richard to gather his belongings and "go home," which he did; (25) respondent called Richard's guardian to inform her about what occurred and "asked her how to handle it as Richard has a brain injury."

Respondent pleaded no contest to the following allegations: (1) on March 2, 2020, a CPS complaint was made that alleged that father hit five-year-old HK, who was not wearing any pants, on the buttocks with a tree branch, leaving a bruise; (2) medical personnel observed bruising and the doctor advised CPS that HK's bruises were "consistent with being hit with a linear object"; (3) when CPS interviewed HK, he disclosed that father disciplined him by spanking his butt with a "big," "yellow" board; (4) HK reported that father similarly spanked his siblings; (5) CPS met with respondent and advised her that father "admitted to hitting [HK] with a board"; (6) respondent informed CPS that "her children had told her that [father] hits them with the board"; (7) however, respondent had not observed "marks"; (8) respondent further reported that "she has had

Under MCL 712A.2(b)(1), jurisdiction in proceedings concerning a minor is established when their parent or other person legally responsible for the care and maintenance of the child

> when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

Under MCL 712A.2(b)(2), jurisdiction in proceedings concerning a minor is established when the child's "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in."

In this case, respondent admitted and pleaded no contest to a variety of allegations contained in the second amended petition. Those admissions included that the children were previously removed from respondent's care in 2015 because of their father's physical abuse, but were eventually returned after respondent completed a service plan. Respondent admitted that a previous CPS investigation, based on allegations that respondent's home was unsafe, was substantiated. Respondent pleaded no contest to the allegations that the children told her that father hits them with a board. In fact, respondent had repeated conversations with father where she told him that she does not like when he hits the children because she aware of the consequences, namely, CPS could remove the children. Respondent further admitted there was a CPS complaint alleging that she had unsupervised overnight visitation with her children. She allowed uncle Richard to spend the night. Thereafter, she "walked in on Richard, who had his face in [CK's] naked lap." It was further reported that respondent had Richard, who is developmentally disabled, leave immediately. Much later, respondent admitted that she found CK with her pants and underwear pulled down with Richard standing in the room, and that she called Richard's guardian to inform her of what occurred and to ask how to handle the situation.

Respondent's plea is sufficient to support the trial court's exercise of jurisdiction under MCL 712A.2(b)(1) and (2). Respondent admitted that it was reported that she found Richard sexually abusing seven-year-old CK. Respondent evicted Richard, who was developmentally disabled, from her abode and then called his guardian about how to handle the situation. Respondent admitted that this occurred during an overnight unsupervised visit with the children. Moreover, respondent pleaded no contest to knowing that the children's father was hitting them with a board and that she expressed her concerns to him, including that CPS might remove the children. Respondent had been through previous CPS investigations related to father's physical abuse and completed services before regaining custody. Despite this, additional physical and sexual abuse occurred. Respondent did not contact law enforcement or seek professional

---

conversations with [father] about hitting [the children] with the board 'several times' "; (9) respondent told father that "when he hits the children with a board, she doesn't like it and is against it because she knows what could happen," i.e., CPS could remove the children.

assistance to appropriately address the incidents. Instead, someone else reported the allegations of physical and sexual abuse to CPS.

The trial court determined that respondent's admissions established that respondent failed to provide necessary care for the children and that her home was unfit for them because of neglect. On this record, we are not convinced that any error, let alone plain error, occurred that affected respondent's rights. Accordingly, the trial court properly assumed jurisdiction over respondent's children.

## III. DEFICIENT PETITION

Respondent argues petitioner's second amended petition was deficient because it did not include the specific statutory subsection under which DHHS sought termination of her parental rights. Respondent raised this issue below and although the court took the issue under advisement, it never addressed it.

At the termination hearing, however, petitioner specifically argued that termination was warranted under MCL 712A.19b(3)(b) because respondent failed to protect her children from physical and sexual abuse despite having the opportunity to do so and that there was a reasonable likelihood that the children would suffer injury or abuse in the future if returned to respondent's home. Respondent's attorney argued that petitioner would not meet its burden of proof under subsection (b)(*ii*).

The interpretation and application of statutes and court rules are reviewed de novo. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). In pertinent part, MCR 3.961(B)(6) states that a petition must contain: "The type of relief requested. A request for removal of the child or a parent or for termination of parental rights at the initial disposition must be specifically stated." See also MCR 3.977(A)(2) ("Parental rights of the respondent over the child may not be terminated unless termination was requested in an original, amended, or supplemental petition by" certain persons or entities.); MCR 3.977(E)(1). In addition to the type of relief requested, MCR 3.961(B) states that a petition must also include the child's name, address, and date of birth, the names and addresses of the child's parents, essential facts that constitute an offense against the child, and a citation to the section of the Juvenile Code relied on for jurisdiction. MCR 3.961 contains no requirement that a specific statutory ground for termination must be listed, despite noting the requirement to produce a specific citation under the Juvenile Code for jurisdiction. See also MCR 3.977. A petition puts a parent on notice of petitioner's intent to remove a child from their home or terminate a parent's rights to their child's care and custody. *In re Dearmon*, 303 Mich App 684, 693; 847 NW2d 514 (2014).

Petitioner's second amended petition clearly stated it sought termination of respondent's parental rights at the initial disposition. And, although it is certainly better practice to include the specific statutory citation,[6] neither MCR 3.961(B) nor MCR 3.977 require that a subsection of

---

[6] We recognize that a parent in a child protective proceeding has a due-process right to notice of the nature of the proceeding and a meaningful opportunity to be heard. *In re TK*, 306 Mich App

MCL 712A.19b(3) be specified in the petition. A petition is served to put a respondent parent on notice that DHHS is seeking to terminate their parental rights. Respondent was put on notice of the specific subsection relied upon by petitioner numerous times throughout the course of this case, including both previous permanent custody petitions, such as the first amended petition, and at the beginning of respondent's termination hearing during opening statements. In fact, the second amended petition specifically stated:

> The Department of Health and Human Services respectfully requests that the court authorize this amended petition, take jurisdiction over the family, issue an order removing the children from the home and issue an order terminating the parental rights of the mother to the children [JK, CK, and HK].

In addition, the second amended petition included a checked box, reflecting that petitioner sought termination of respondent's parental rights. Between this checked box and the petition's final paragraph, petitioner's intentions were plain and respondent was on notice that termination of her parental rights was being sought by DHHS. Therefore, the trial court did not err when it authorized the second amended petition.[7]

## IV. STATUTORY GROUNDS

Respondent argues that the trial court committed clear error when it found a statutory ground for termination under MCL 712A.19b(3)(b)(*ii*) because there was insufficient evidence to establish how respondent could have prevented the physical and sexual abuse of her children. We disagree.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews a trial court's factual findings and

---

698, 706; 859 NW2d 208 (2014). But the trial court's reliance on a statutory ground for termination that was not cited in the petition does not violate due process, so long as "the respondent was given adequate notice of the proofs that he would have to present to overcome termination . . . ." *In re Perry*, 193 Mich App 648, 651; 484 NW2d 768 (1992). In this case, even though the specific statutory citation did not appear in the second amended petition, it included language explaining that it was contrary to the children's welfare to remain in respondent's home because respondent "failed to protect her children from physical and sexual abuse." More specifically, respondent "was aware of [father's] physical abuse . . . and did not stop him from harming the children." Respondent was further "aware that Richard [] should not be in her home, and she allowed him to spend the night when she had unsupervised visitation[] at her home. During this sleepover, Richard inappropriately touched [CK] . . . . [Respondent] still continues to downplay the situation." The 44-paragraph attachment to the second-amended petition likewise provided respondent with notice of the specific allegations against her.

[7] Even if we accepted respondent's argument, respondent would not be entitled to relief because any error was harmless. See footnote 6. *In re Williams*, 333 Mich App 172; 958 NW2d 629 (2020), citing MCR 2.613(A).

ultimate determinations on the statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App at 472 (quotation marks and citation omitted). Notably, the clear and convincing evidence standard is "the most demanding standard applied in civil cases[.]" *Id.* (quotation marks and citation omitted).

> Evidence is clear and convincing if it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct, and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id.* (quotation marks and citation omitted).]

The trial court "may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial . . . ." *In re Mota*, 334 Mich App 300, 316; 964 NW2d 881 (2020). The trial court may also consider "any additional relevant and material evidence that is received by the court at the termination hearing . . . ." *Id.*

MCL 712A.19b(3)(b)(*ii*) provides for termination of parental rights when:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

* * *

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

Respondent argues that there was insufficient evidence to show she had the opportunity to prevent the physical or sexual abuse. But the record shows that respondent's children were previously removed because of father's physical abuse. After respondent completed, and purportedly benefitted from services designed to ameliorate the issue, father continued to physically assault JK, CK, and HK, using not only his hands, but also a board and belt. It was only after HK's school filed a complaint with CPS that the continued physical abuse was revealed. Medical professionals soon determined that HK's injuries were consistent with being struck by a linear object. Still later, during a trauma assessment, CK also reported that respondent knew father hit the children, but did nothing to stop it. Respondent herself pleaded no contest to the allegation that her children told her that father hit them with a board; however, respondent denied seeing any marks. On the date that respondent made the statement denying that she saw any marks, the trial court noted that the caseworker "noticed both old and new bruises on five-year-old [HK]." And

the "[p]ictures . . . attached to the police report . . . show[ed] bruises spanning [HK's] entire back, upper leg, and buttocks." Respondent further pleaded no contest to the allegation that she had conversations with father about hitting the children "several times[.]" Respondent reported that she told father that she does not like his use of the "board" and "is against it" because she knew that CPS could remove the children. Thus, respondent was fully aware that father was physically abusing the children. And rather than protecting the children by removing them from father or contacting others for assistance, respondent repeatedly talked to father without success. The evidence presented amply supported the trial court's findings that respondent failed to protect HK and allowed father's physical abuse to continue.

Likewise, respondent knew that she was not to leave her children unattended with Richard because of his developmental disability and prior history of criminal sexual conduct. Nevertheless, during an unsupervised overnight that respondent had with the children, she allowed Richard to spend the night. Richard then sexually abused CK. When respondent discovered Richard in the act, she told investigators that she called Richard's guardian to ask how to handle the situation; however, Richard's guardian testified that the cell phone service was shoddy and she "couldn't quite hear what [respondent] said," even though there were "accusations made . . . ." Yet again, respondent failed to report Richard's sexual abuse and CPS learned of it after CK's school counselor reported it. In short, respondent could have prevented CK's sexual abuse simply by not allowing Richard to stay at her apartment with her children unsupervised.

Respondent contends that she had no reason to suspect Richard's involvement in sexual abuse because petitioner allowed Richard to attend supervised visitation between father[8] and the children. But those visitations were supervised and respondent was repeatedly informed that "no one with a CSC history was to be around the children, including . . . Richard." Respondent later described an incident that occurred in Richard's past, characterizing it to her father as a "Romeo-Juliet" situation.[9]

Respondent further asserts that she protected CK by evicting Richard from the apartment. But at that point, the sexual assault had already occurred. And despite all the services respondent received, she called Richard's guardian to ask how to handle the situation. Once again, respondent did not report the assault to law enforcement or seek assistance for CK. Instead, CK reported the assault. When interviewed, respondent initially denied that anything occurred. It was only much later that respondent admitted that Richard acted inappropriately. Given the circumstances, the trial court did not clearly err when it found that respondent failed to protect CK from sexual abuse.

Finally, the trial court determined that there was a reasonable likelihood that the children would suffer injury or abuse if returned to respondent's home. The court explained that the children suffered from various levels of trauma, including PTSD and incontinence, from what occurred when they lived with respondent. The children were well aware that respondent did nothing to protect them despite knowing of father's abuse. Respondent's history of failing to

---

[8] Richard lived with father, who was his brother and served as his co-guardian.

[9] Respondent also had a relationship with the children's other paternal uncle, who was a convicted sex offender.

protect the children dated back to 2015. And despite receiving services specifically designed to give respondent the tools to protect her children, additional physical and sexual abuse occurred. The evidence presented at the termination hearing showed that respondent failed to protect her children from both physical and sexual abuse, even though she had the opportunity to do so, and that returning the children to her care would result in a reasonable likelihood of them suffering from injury and abuse in the future. Therefore, the trial court did not clearly err when it concluded that there was sufficient evidence to establish statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*ii*).

Affirmed.

/s/ Anica Letica
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney